IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-500-D

IAN MCLAUGHLIN,            )
                           )
            Plaintiff,     )
                           )
      v.                   )     **ORDER**
                           )
LILY CHIN,                 )
                           )
            Defendant.     )

On December 8, 2022, Ian McLaughlin ("McLaughlin" or "plaintiff") filed a complaint against Lily Chin ("Chin" or "defendant") alleging defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy [D.E. 1]. On December 8, 2022, McLaughlin also filed an ex parte motion for leave to proceed under the pseudonym John Doe [D.E. 5] and filed a memorandum in support [D.E. 6]. On January 5, 2023, the court denied McLaughlin's motion for leave to proceed pseudonymously [D.E. 8]. On January 15, 2023, McLaughlin appealed [D.E. 9]. On October 26, 2023, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment [D.E. 21]. See Doe v. Doe, 85 F.4th 206, 208 (4th Cir. 2023).

On November 9, 2023, McLaughlin filed an amended complaint against Chin alleging defamation, abuse of process, tortious interference with contract, intentional infliction of emotional distress, and civil conspiracy [D.E. 23]. On December 15, 2023, Chin moved to dismiss McLaughlin's abuse of process, tortious interference with contract, and civil conspiracy claims [D.E. 27] and filed a memorandum in support [D.E. 28]. On December 15, 2023, Chin also moved to transfer the case to the United States District Court for the Eastern District of Louisiana [D.E.

29] and filed exhibits [D.E. 29-1 to 29-8, 30] and a memorandum in support [D.E. 31]. On January 17, 2024, McLaughlin responded in opposition to Chin's motions [D.E. 37, 41] and filed exhibits in support [D.E. 35, 36, 38, 39]. On January 31, 2024, Chin replied [D.E. 49, 50]. As explained below, the court grants Chin's motion to transfer and leaves Chin's motion to dismiss pending for the United States District Court for the Eastern District of Louisiana to resolve.

I.

In May 2018, McLaughlin enrolled at Tulane University ("Tulane"). See Am. Compl. [D.E. 23] ¶ 11. In August 2018, McLaughlin matriculated at Tulane. See id. McLaughlin "enrolled in Tulane with the understanding that he would be afforded a fair and equitable educational experience," free from conduct Tulane prohibited in its Code of Student Conduct. Id. at ¶ 13. Chin attended Tulane with McLaughlin. See id. at ¶ 7.

In September 2019, McLaughlin met Sue Roe ("Roe"). See id. at ¶ 14. From September 2019 to December 2019, McLaughlin and Roe maintained a "casual sexual relationship." Id. By the end of Tulane's fall 2019 semester, McLaughlin and Roe "eventually stopped seeing each other," and McLaughlin "seldom reached out to" Roe. Id.

In January 2020, McLaughlin and Roe returned to campus but did not often interact with each other. See id. at ¶ 15. McLaughlin alleges he "felt tension between him and" Roe whenever he saw her, and once, Roe began to cry during a party McLaughlin also attended. Id. Roe told others about her negative feelings towards McLaughlin and would "explicitly say she 'hated'" McLaughlin. Id. In spring 2021, McLaughlin and Roe had a consensual sexual encounter. See id. The pair did not interact with each other again until August 2021. See id.

On August 22, 2021, McLaughlin and Roe each attended a mutual friend's birthday party. See id. at ¶ 16. McLaughlin bought Roe a drink, and the pair "ended up spending time together at

2

the party and leaving the bar together." Id. The pair discussed their past relationship, returned to Roe's home, and engaged in consensual sex. See id. Afterwards, McLaughlin told Roe they "may regret that later," which caused Roe to cry. Id. at ¶ 17. McLaughlin went to sleep, but Roe asked a housemate to wake McLaughlin up and ask him to leave. See id. at ¶¶ 17–18. McLaughlin eventually complied and left Roe's residence. See id. at ¶ 18.

In September 2021, McLaughlin and Chin "matched" on Tinder. See id. at ¶ 19. On November 20, 2021, McLaughlin and Chin met and exchanged phone numbers. See id. On January 27, 2022, McLaughlin and Chin ran into each other at a bar and went to McLaughlin's house. See id. at ¶ 20. The pair "did not engage in sexual intercourse," and Chin left the next morning. Id. Between January 29, 2022, and February 2, 2022, McLaughlin and Chin met multiple times and engaged in consensual sex. See id. at ¶¶ 21–30.

On February 3, 2022, McLaughlin went to a bar with some friends and "ran into a woman, 'A.H.', on whom he had a crush." Id. at ¶ 31. McLaughlin and A.H. eventually left the bar, went to McLaughlin's house, and engaged in consensual sex. See id. McLaughlin alleges that "Chin saw [McLaughlin] talking to A.H. at the bar and heard that he and A.H. went home together." Id.

Beginning on February 4, 2022, McLaughlin alleges Chin began a campaign to disseminate false allegations about him. See id. at ¶ 32. On February 4, 2022, Chin told one of McLaughlin's friends, T.R., that McLaughlin "engaged in nonconsensual activity." Id. By February 6, 2022, "false rumors had begun spreading around" Tulane that McLaughlin sexually assaulted a female student. Id. at ¶ 33. Other Tulane students told McLaughlin about the rumors and social media posts. See id. at ¶¶ 33–35. McLaughlin later learned that on February 6, 2022, Chin reported her allegations against McLaughlin to Tulane's University Case Management and Victim Support Services. See id. at ¶ 46. On February 8, 2022, McLaughlin received a text message from Chin

3

in which she accused McLaughlin of sexually assaulting her and called McLaughlin a "predator and a repeat offender." Id. at ¶ 37.

On February 10, 2022, McLaughlin's fraternity kicked him out of its group chat. See id. at ¶ 44. On February 11, 2022, McLaughlin withdrew from Tulane. See id. at ¶ 45. On February 11, 2022, Roe and Chin "simultaneously submitted Title IX / Sexual Misconduct reports [to Tulane] naming [McLaughlin] as the respondent." Id. at ¶ 47. Roe and Chin both "reported having consensual sex with [McLaughlin], falling asleep, and waking up to him engaging in sexual activity." Id. On February 16, 2022, Tulane's Director of Student Conduct, Christopher Zacharda ("Zacharda"), told McLaughlin that the Office of Student Conduct received information that McLaughlin may have violated the Tulane University Code of Conduct and charged McLaughlin with sexual assault. See id. at ¶ 48. The Office of Student Conduct told McLaughlin and Chin that it would begin investigating Chin's allegations and reminded them that the Student Code of Conduct "prohibits making false statements and/or knowingly providing false information" during the investigation. Id. at ¶¶ 48–49.

On February 16, 2022, Jacqueline Barber ("Barber") interviewed Chin and Roe. See id. at ¶¶ 50–51. McLaughlin alleges that during Chin's interview, Chin made numerous false statements to Barber. See id. at ¶¶ 50–53, 55–67. McLaughlin also alleges Chin doctored evidence that she gave to Barber. See id. at ¶¶ 68–76. On February 18, 2022, Zacharda told McLaughlin he was banned from Tulane's campus, effective immediately. See id. at ¶ 54.

On March 16, 2022, Chin filed for a temporary restraining order ("TRO") against McLaughlin in Louisiana civil court. See id. at ¶ 87. McLaughlin alleges Chin supported her TRO motion with false allegations. See id. at ¶¶ 87–88. On March 24, 2022, McLaughlin flew to New Orleans to seek dismissal of the TRO. See id. at ¶ 89. Chin did not attend the court hearing, and

4

the court dismissed Chin's motion for a TRO. See id. On May 8, 2022, Tulane found McLaughlin "responsible of the charge of sexual assault" and dismissed McLaughlin from the University less than one month before his scheduled graduation. Id. at ¶ 90. On April 24, 2023, McLaughlin sued Tulane in the United States District Court for the Eastern District of Louisiana for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, and breach of contract. See [D.E. 30-1]. That lawsuit remains pending.

II.

A.

McLaughlin argues judicial estoppel bars Chin from seeking transfer. See [D.E. 38] 20–23. Chin disagrees. See [D.E. 50] 1–4.

Judicial estoppel "precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996) (quotation omitted). The doctrine prevents "a party from playing fast and loose with the courts, and . . . protect[s] the essential integrity of the judicial process." Id. (quotation omitted); see John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28–29 (4th Cir. 1995); Oudeh v. Goshen Med. Ctr., Inc., No. 5:22-CV-193, 2022 WL 18028281, at *6 (E.D.N.C. Dec. 29, 2022) (unpublished). Judicial estoppel applies when:

> (1) the party to be estopped . . . advanc[es] an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.

Folio v. City of Clarksburg, 134 F.3d 1211, 1217–18 (4th Cir. 1998); see Lowery, 92 F.3d at 224; Oudeh, 2022 WL 18028281, at *6; Cannon v. Wal-Mart Assocs., Inc., No. 5:19-CV-373, 2021 WL 4164075, at *8 (E.D.N.C. Sept. 10, 2021) (unpublished). Judicial estoppel also applies when

5

a party prevails in one phase of a case on an assertion and then relies on a contradictory assertion to prevail in another phase of the same case. See Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000).

As for the first two elements, McLaughlin contends that Chin's present position "that this action arises out of the same set of operative facts" as McLaughlin's Title IX case in the Eastern District of Louisiana conflicts "with her position in the Fourth Circuit." [D.E. 38] 21. McLaughlin argues that when he appealed this court's denial of his motion to proceed pseudonymously, Chin factually distinguished this case from McLaughlin's Title IX case by citing the different parties involved and McLaughlin's different claims. See id. at 21–22; see also Doe, 85 F.4th at 217 (rejecting McLaughlin's "central argument on appeal . . . that his case centers around a confidential Title IX proceeding so it is different than the garden variety defamation case" (cleaned up)). McLaughlin contends that Chin implicitly argued on appeal "that this action is not related to an action against Tulane such that [Chin] could, or would, seek transfer and consolidation of the two actions." [D.E. 38] 22 (emphasis in original). Chin responds that "her position on the distinctions between a defamation case and a Title IX case against a university was a legal" position, not a factual assertion. [D.E. 50] 2.

McLaughlin's argument may be relevant if Chin seeks to consolidate the two actions in the Eastern District of Louisiana. Cf. [D.E. 31] 11 ("[T]ransfer would permit consolidation of those cases for discovery, promoting judicial economy."). McLaughlin, however, does not clarify how Chin's arguments concerning the relatedness of the two cases forecloses her transfer request. Moreover, when considering Chin's motion to transfer, the court considers (1) whether this action could have been brought in the Eastern District of Louisiana, (2) the weight given to McLaughlin's choice of forum, (3) witness convenience and access, (4) convenience of the parties, and (5) the

6

interest of justice. Although Chin asserts that McLaughlin's "two cases arise out of the same set of operative facts," [D.E. 31] 1, Chin makes that assertion as part of her argument that the interest of justice favors transfer. See id. at 15–16, 21–22. Accordingly, the court rejects McLaughlin's argument that judicial estoppel bars Chin's motion to transfer.

Alternatively, Chin's position on appeal that McLaughlin cites to invoke judicial estoppel was a legal position, not a factual assertion. On appeal, Chin asserted, inter alia, that: (1) McLaughlin "did not sue his university" in this action; (2) McLaughlin "is not challenging the result of the university disciplinary proceeding" in this action; (3) McLaughlin "does not seek to expunge his disciplinary record" in this action; (4) McLaughlin "sued an individual who accused him of sexual assault, alleging defamation and other claims" in this action; and (5) McLaughlin "seeks money damages for injuries of a public nature" in this action. [D.E. 35-2] 23–24; see also id. at 54–59. Chin does not contradict these factual assertions in her motion to transfer. Cf. [D.E. 31] 15–16, 21–22.[1] Thus, this action differs from mine-run judicial estoppel cases in which a party asserts directly contradictory facts. See, e.g., Hamilton v. Dayco Prods., LLC, C.A. No. 2:07-2781, 2009 WL 335062, at *6–10 (D.S.C. Feb. 10, 2009) (unpublished) (applying judicial estoppel to bar a plaintiff from claiming that she was capable of working at the time of her termination when she had previously asserted repeatedly that she was unable to perform the responsibilities of her job). Accordingly, judicial estoppel does not bar Chin from seeking a transfer. See, e.g., Scott

---

[1] Indeed, it is not even clear that Chin's legal conclusions contradict each other. On appeal, Chin argued that McLaughlin failed justify his use of a pseudonym as a matter of law. See [D.E. 35-2] 23, 53–54. Here, Chin relies on additional overlapping facts to argue that transfer is warranted under governing law. See [D.E. 31] 15–16, 21–22. Both can be true because the governing standards differ. Compare Doe v. Pub. Citizen, 749 F.3d 246, 273–74 (4th Cir. 2014), with Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29–30 (1988).

7

v. Fam. Dollar Stores, Inc., 733 F.3d 105, 118 (4th Cir. 2013). Thus, the court addresses Chin's motion to transfer.

B.

Chin moves to transfer this case to the United States District Court for the Eastern District of Louisiana. See [D.E. 29]. McLaughlin opposes a transfer. See [D.E. 37].

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In analyzing a motion to transfer, the court initially determines whether the action could have been brought in the proposed transferee district. See, e.g., Szulik v. TAG V.I., Inc., 858 F. Supp. 2d 532, 547 (E.D.N.C. 2012) (collecting cases). If so, the court must then decide whether to transfer venue. See id.

To determine whether an action could have been brought in the transferee forum, a court must find that personal jurisdiction and venue would have been proper in the proposed transferee district had the plaintiff filed there. See, e.g., Hoffman v. Blaski, 363 U.S. 335, 340–44 (1960). Personal jurisdiction over Chin would have been proper in the Eastern District of Louisiana based on Chin's contacts with that district. Venue also would have been proper in the Eastern District of Louisiana because a substantial part of the events giving rise to McLaughlin's claims arose in that district. See Am. Compl. ¶¶ 11–91; 28 U.S.C. § 1391(b)(2); cf. [D.E. 31] 7, 8–9. Therefore, McLaughlin could have brought this action in the Eastern District of Louisiana.

Next, the court must decide whether to transfer venue. See Szulik, 858 F. Supp. 2d at 548; Dacar v. Saybolt LP, No. 7:10-CV-12, 2011 WL 223877, at *2 (E.D.N.C. Jan. 24, 2011) (unpublished); Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007). A district court must "consider four factors when deciding whether to transfer venue: (1) the weight

8

accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).[2] In balancing these factors, a district court has substantial discretion to decide whether to transfer venue. See Stewart Org., Inc., 487 U.S. at 29; Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006). "As a court considers [these] factors, it is mindful that the ultimate decision of whether transfer is appropriate is not reached by cataloguing the weighted result of each factor, but rather is within the art of judging." Golden Corral Franchising Sys., Inc. v. GC of Vineland, LLC, No. 5:19-CV-255, 2020 WL 1312863, at *2 (E.D.N.C. Mar. 17, 2020) (unpublished) (quotation omitted).

As for the first factor, a "plaintiff's choice of forum is generally accorded great weight unless the interests of justice weigh heavily in favor of a transfer." Bannister v. Wal-Mart Stores E., L.P., 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012). Courts, however, give deference to the plaintiff's choice of forum that "is proportionate to the relationship between the forum and the cause of action." Id.; see Boyd v. Koch Foods, No. 5:10-CV-349, 2011 WL 2413844, at *2 (E.D.N.C. June 10, 2011) (unpublished); Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004). McLaughlin is a resident of South Carolina who, at all relevant times, "was a student at Tulane University in Louisiana." Am. Compl. ¶ 6. Chin resided in North Carolina when McLaughlin filed this action, but she now resides in Colorado. Compare id. at ¶ 7, with [D.E. 31] 12. McLaughlin alleges conduct that occurred in the Eastern District of Louisiana when

---

[2] Courts in this district have described the test in terms of eleven more-specific factors rather than four more-general factors, but the analysis remains essentially the same. See Szulik, 858 F. Supp. 2d at 548; Dacar, 2011 WL 223877, at *3; Charles v. Bradley, No. 5:08-CV-124, 2009 WL 1076771, at *2 (E.D.N.C. Apr. 21, 2009) (unpublished).

9

Case 5:22-cv-00500-D-BM    Document 58    Filed 03/28/24    Page 9 of 15

McLaughlin and Chin attended Tulane University. See Am. Compl. ¶¶ 6, 7, 11–76. Thus, this factor weighs against transfer. The court, however, gives this factor little weight in light of the tenuous relationship between the Eastern District of North Carolina and McLaughlin's causes of action. See, e.g., Bannister, 843 F. Supp. 2d at 615.

The second factor concerns accessibility of evidence and witnesses. The Eastern District of Louisiana would be more convenient for potential non-party witnesses because they all share a connection to Tulane where the alleged events took place. Cf. BR Tank, LLC v. Holcim (US) Inc., Civ. No. 09-2110, 2009 WL 3831379, at *3 (S.D. Tex. Nov. 12, 2009) (unpublished). No potential non-party witnesses reside in or have any connection to the Eastern District of North Carolina. See [D.E. 31] 12–14; [D.E. 38] 25. Moreover, transfer to the Eastern District of Louisiana would facilitate access to evidence that remains at Tulane, such as records of Chin's statements about McLaughlin during Tulane's Title IX investigation. See, e.g., Am. Compl. ¶¶ 47–49. The parties have not cited any potential evidence in the Eastern District of North Carolina.

The second factor also encompasses the availability of compulsory processes for witnesses and evidence. Thus, Chin "must identify the specific non-party witnesses, demonstrate whether those witnesses are willing to travel to a foreign jurisdiction, and proffer details concerning the materiality of any non-party testimony." Accreditation Comm'n for Health Care, Inc. v. NextLOGiK, Inc., No. 5:20-CV-46, 2020 WL 4913280, at *6 (E.D.N.C. Aug. 20, 2020) (unpublished) (cleaned up); see Siemens Energy, Inc. v. CSX Transp., Inc., Civ. No. 15-1072, 2016 WL 1059261, at *5 (D. Md. Mar. 17, 2016) (unpublished); IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 623–24 (M.D.N.C. 2012); Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 634–35 (E.D. Va. 2006).

10

Case 5:22-cv-00500-D-BM   Document 58   Filed 03/28/24   Page 10 of 15

Chin contends several potential witnesses reside in Louisiana, including Tulane officials who investigated McLaughlin. See [D.E. 31] 12–14. Chin also contends McLaughlin fails to identify any witnesses who reside in North Carolina. See id. McLaughlin responds that non-party witnesses reside in New York, Illinois, and Louisiana. See [D.E. 38] 25. McLaughlin also contends that Chin fails to meet her burden to show that these non-party witnesses would be unwilling to voluntarily testify in North Carolina. See id. at 25–26.

Chin fails to demonstrate that any non-party witnesses who reside outside the Eastern District of North Carolina would decline to voluntarily travel to this district. See [D.E. 31] 12–14. McLaughlin, however, concedes that at least one potential non-party witness would be subject to compulsory process in the Eastern District of Louisiana. See [D.E. 38] 25. No potential witnesses mentioned by either party would be subject to compulsory process in the Eastern District of North Carolina. Thus, the second factor slightly favors transfer in light of witness convenience and access to evidence. See, e.g., Hubbard v. Eitan Grp. N. Am., 669 F. Supp. 3d 538, 551 (E.D.N.C. 2023).

As for the third factor, the parties do not currently reside in either the Eastern District of North Carolina or the Eastern District of Louisiana. See Am. Compl. ¶ 6; [D.E. 31] 12; [D.E. 38] 9. The distance from Louisiana to McLaughlin's residence, relative to the distance from North Carolina to McLaughlin's residence, weighs against transfer. See, e.g., D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 783 (D. Md. 2009). Louisiana, however, is closer to Chin's current residence in Colorado, and McLaughlin has a pending case in the Eastern District of Louisiana. Thus, this factor slightly weighs in favor of transfer. Cf. id.

The fourth factor concerns the interest of justice. The interest of justice implicates "the relative congestion of the transferee and transferor courts, the particular interest a forum may have

11

in deciding a case, and the preference for judicial efficiency and consistency." Cherry Tree Farms, LLC v. Runyan, No. 2:16-CV-60, 2016 WL 7436082, at *5 (E.D.N.C. Dec. 21, 2016) (unpublished). "The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum." D2L Ltd., 671 F. Supp. 2d at 783 & n.21–22 (collecting cases).

As for relative docket congestion, the Eastern District of Louisiana is less congested than the Eastern District of North Carolina. As of December 31, 2023, the Eastern District of North Carolina had 992 weighted filings per judge, whereas the Eastern District of Louisiana had 717 weighted filings per judge. See United States Courts, Federal Court Management Statistics, December 2023, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023 (last visited Mar. 27, 2024). The median time, however, between the filing of a civil action and its disposition is 11.5 months in the Eastern District of Louisiana, compared to 8.1 months in the Eastern District of North Carolina. See id. Moreover, the Eastern District of North Carolina is being inundated with actions under the Camp Lejeune Justice Act and that inundation is not expected to end soon. Thus, the relative congestion of the two forum courts slightly favors transfer. See, e.g., Cherry Tree Farms, LLC, 2016 WL 7436082, at *5.

As for the local interest in this case, "litigation should take place in the federal judicial district or division with the closest relationship to the operative events." Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008). The local interest is much greater in the Eastern District of Louisiana. McLaughlin and Chin were students at Tulane University at all relevant times. See Am. Compl. ¶¶ 6–7. Chin's alleged conduct underlying McLaughlin's complaint took place in the Eastern District of Louisiana and allegedly injured McLaughlin in that district. See id. at ¶¶ 11–91. McLaughlin alleges Chin abused the process of Louisiana's civil courts and Tulane's Title IX process, which presents a uniquely Louisianan

12

concern. See id. at ¶¶ 111, 116. Louisiana law applies to most of McLaughlin's claims. See Ferrante v. Westin St. John Hotel Co., 559 F. Supp. 3d 492, 504 (E.D.N.C. 2020) (describing North Carolina choice-of-law rules).[3] "While . . . federal courts in general[] are adept at applying the law of various states, Louisiana law is unique among jurisdictions—due to its civil law origins." Troutman v. Cooper Tire & Rubber Co., Civ. No. 09-4084, 2010 WL 10950559, at *2 (W.D. Ark. Apr. 15, 2010) (unpublished). Thus, this factor weighs "heavily in favor of Louisiana." Sallyport Glob. Servs., Ltd. v. Arkel Int'l, LLC, 78 F. Supp. 3d 369, 375 (D.D.C. 2015); see, e.g., Troutman, 2010 WL 10950559, at *2.

As for judicial efficiency and consistency, McLaughlin concedes that "some efficiencies would be achieved by the transfer and consolidation sought by" Chin. [D.E. 38] 30. McLaughlin, however, contends that these efficiencies do not overcome the "[f]undamental [u]nfairness" of exposing McLaughlin's identity in his Title IX action. Id.; see id. at 27 (arguing "[t]he disclosure of Plaintiff's identity in the Tulane action would be particularly unjust"). Chin responds that "McLaughlin's identity is already public because he chose to pursue this case, and he is already linked to the Tulane case because of his own public filing." [D.E. 50] 8; see [D.E. 46-1] (McLaughlin's filing in the Fourth Circuit that links this action with his Title IX action).

The court agrees with Chin. Moreover, McLaughlin does not cite, and the court has not located, any cases in which a party successfully opposed transfer because transfer might destroy

---

[3] McLaughlin contends that South Carolina law applies to his tortious interference with a contract claim because he resided in South Carolina when Tulane dismissed him from the university. See [D.E. 41] 26–28. The court need not decide whether Louisiana or South Carolina law applies to this claim. Even if South Carolina law applies to McLaughlin's tortious interference with contract claim, the claim would not favor or oppose transfer from North Carolina to Louisiana. Louisiana law applies to McLaughlin's remaining claims. Thus, on balance, this factor still weighs in favor of transfer to the Eastern District of Louisiana.

13

anonymity in another case in the transferee district. Accordingly, the court rejects McLaughlin's argument, and the court grants Chin's motion to transfer.

On January 17, 2024, McLaughlin moved to seal Chin's memorandum in support of her motion to transfer and several exhibits. See [D.E. 42]. On January 22, 2024, Chin responded in opposition but consented to redacting McLaughlin's phone number from [D.E. 36-1] and sealing that document. See [D.E. 45] 10. On January 29, 2024, McLaughlin moved to seal two exhibits that Chin filed with her response in opposition to McLaughlin's first motion to seal. See [D.E. 48]. On February 1, 2024, Chin responded in opposition. See [D.E. 53]. On February 7, 2024, McLaughlin moved to seal an unredacted version of Chin's reply in support of her motion to transfer. See [D.E. 54]. On February 9, 2024, Chin responded in opposition. See [D.E. 56].

The court has reviewed the motions under the governing standard. See, e.g., Gonzalez v. Cuccinelli, 985 F.3d 357, 376–77 (4th Cir. 2021); Doe, 749 F.3d at 272–73. The court grants in part McLaughlin's motion to redact his phone number from the unredacted version of Chin's petition for a restraining order and to seal the remainder of Chin's petition. See [D.E. 45] 10; see also [D.E. 36-1] (Chin's petition). For the reasons stated in Chin's memoranda in opposition, the court denies the remainder of McLaughlin's motions.

### III.

In sum, the court GRANTS IN PART plaintiff's motion to seal [D.E. 42], REDACTS plaintiff's phone number from and SEALS [D.E. 36-1], DENIES plaintiff's motions to seal [D.E. 48, 54], GRANTS defendant's motion to transfer venue [D.E. 29], and TRANSFERS this action to the United States District Court for the Eastern District of Louisiana. Defendant's motion to dismiss [D.E. 27] remains pending for resolution in the Eastern District of Louisiana.

14

SO ORDERED. This 27 day of March, 2024.

                                                                            JAMES C. DEVER III
                                                                            United States District Judge

15

Case 5:22-cv-00500-D-BM   Document 58   Filed 03/28/24   Page 15 of 15